IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>PATRICIA JACOBSEN, ELYCIA WASHINGTON, and BRANDY WILLIAMSON,<br><br>               Defendants. | 8:21CR06<br><br>FINDINGS AND RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress (Filing No. 59) and brief (Filing No. 60) filed by the defendant, Brandy Williamson, and the Motion to Suppress (Filing No. 61) and brief (Filing No. 62) filed by the defendant, Elycia Washington. Both defendants seek suppression of evidence seized during the execution of a search warrant at a hotel room on October 21, 2020. Both defendants also request a hearing pursuant to *Franks v. Delaware*. The government filed a consolidated brief (Filing No. 65) opposing both motions. The undersigned magistrate judge held a telephone conference regarding the motions with counsel for the parties on June 3, 2021. Because the defendants only challenge the validity of the search warrant, no evidentiary hearing is required as that determination is made by reviewing the four corners of the warrant affidavit and application, which the government filed at Filing No. 67. See *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)("[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."). The matter is now fully submitted. For the following reasons, the undersigned magistrate judge recommends that both motions be denied.

## BACKGROUND

      On October 14, 2020, a Nebraska county court judge signed a no-knock search warrant for a residence at 6525 Charles Street in Omaha, Nebraska, based upon an affidavit submitted by Officer Christopher Perna. (Filing No. 67-1). The affidavit contained the following information:

      Officer Perna was contacted by a reliable confidential informant ("CI") stating he/she knew of an individual named Jesse Dominguez actively selling methamphetamine in the Omaha area. The CI stated Patricia Jacobsen was an "active party" with Dominguez in the drug organization. This CI in the past had made controlled purchases of illegal narcotics under the direction of Officer

Perna. These controlled purchases tested positive for the narcotics the CI was purchasing and the CI is familiar with illegal narcotics and how they are packaged and sold. The CI was under no terms of parole, probation, or work release.

After receiving the CI's information regarding Dominguez and Jacobsen, Officer Perna looked up Dominguez in the Nebraska Criminal Justice Information System and found he has a prior federal conviction for selling/distributing a controlled substance and for possession of a firearm, and prior arrests for possession with intent to deliver methamphetamine, possession of a firearm, and several traffic offenses. Officer Perna also looked up Jacobsen and found she has a prior federal conviction for selling/distributing a controlled substance and prior arrests for possession with intent to deliver methamphetamine, possession of methamphetamine, burglary, and traffic offenses.

Within 72 hours of October 14, 2020, Officer Perna met with the CI and arranged for the CI to conduct a controlled purchase of methamphetamine from Dominguez at Jacobsen's residence at 6225 Charles Street. The utilities of the residence were in Jacobsen's name. The CI was equipped with audio-video recording equipment to record the transaction. Officers surveilled the residence during the controlled purchase. During their surveillance, officers observed Dominguez arrive at the residence in a silver Jeep Liberty, enter the residence for approximately 15 minutes, and then leave in the Jeep. After the controlled purchase, the CI met with officers at a prearranged meet location and produced a Ziploc bag containing possible methamphetamine, which the CI stated he/she purchased from Dominguez inside the residence. The CI was searched before and after the controlled purchase and officers found no other items of evidence. The suspected methamphetamine weighed 74.4 grams and field tested positive for methamphetamine. The CI stated Dominguez had a 9mm handgun in his possession during the controlled purchase. (Filing No. 67-1 at pp. 3-5).

Based on the above information, a search warrant was authorized for 6525 Charles Street, which was executed by officers on October 20, 2020. (Filing No. 67-1 at p. 6). The next day, on October 21, 2020, a Nebraska county court judge signed a search warrant for room #471 at a Holiday Inn Express and Suites on 24th Street and Farnam Street, based upon Officer Perna's affidavit containing the following information:

During the execution of the search warrant at 6525 Charles Street on October 20, 2020, officers located Patricia Jacobson inside the residence and recovered 466 grams of

methamphetamine, $17,000 in US currency, scales, baggies, a heat sealer, empty heat-sealed bags, a handgun, and drug records. Officer Perna interviewed Jacobsen, who stated she bought her methamphetamine from an individual named "Brandy" from Arizona and provided a 602-area code phone number for Brandy. Jacobsen told officers that Brandy was on her way to Omaha from Arizona to deliver ten pounds of methamphetamine to Jacobsen. Jacobsen also told Officer Perna that Brandy "always" stays at the Holiday Inn at 24th Street and Farnam Street in Omaha. Officer Perna instructed Jacobsen to call Brandy on the 602-phone number in his presence. Officer Perna heard a female identified as Brandy on the phone, who stated she was on her way to Omaha from Arizona and would be in Omaha late that night (October 20, 2020). Officer Perna ran the 602-phone number through a search database and found it was associated with a Brandy Lynn Williamson, date of birth ("DOB") 3/30/1981, residing at 8328 W Hammond Ln, Tolleson, Arizona. Officer Perna located a copy of Brandy Williamson's Arizona driver's license, which contained the same DOB and address in Tolleson, Arizona associated with the 602-number.

The following morning, on October 21, 2020, officers went to the Holiday Inn on 24th Street and Farnam Street. The general manager of the Holiday Inn stated Brandy Williamson checked into room #417 on the evening of October 20, 2020. An officer showed the general manager a photograph of Williamson and the general manager confirmed it was the same woman that had checked into room #417. Other hotel employees also recognized the woman in the photograph as a woman who had checked in the previous night and as someone who had stayed at the hotel recently. After recounting the above information, the following paragraph is included towards the end of the affidavit:

> The CI in the past had made controlled purchases of illegal narcotics under the direction of Affiant officer. These controlled purchases have tested positive for the narcotics he/she was purchasing. The CI is familiar with illegal narcotics and [how] they are packaged and sold. The CI is under no terms of parole, probation, or work release.

([Filing No. 67-2 at pp. 2-3](#)). An identical paragraph was contained in the affidavit for the prior warrant for the residence at 6525 Charles Street. (Compare [Filing No. 67-1 at p. 5](#)). The government states in its brief that the inclusion of this paragraph in the affidavit for the hotel room was a drafting error and was an inadvertent holdover from the affidavit supporting the search warrant for the Charles Street residence. ([Filing No. 65 at p. 10](#)).

Based upon the above information, a search warrant was authorized for room #417 at the Holiday Inn Express for narcotics, currency, weapons, drug paraphernalia, drug records, and any other items of evidence linked to Williamson's drug operation. This warrant was executed on October 21, 2020. (Filing No. 67-2 at p. 7). According to defendant Washington's brief, officers located a purse inside the hotel room that belonged to Washington and contained contraband seized by law enforcement. (Filing No. 62 at p. 2).

On January 21, 2021, a grand jury returned a three-count Indictment charging Williamson, Washington, and Jacobson with conspiracy to distribute 50 grams or more of methamphetamine (Count I); charging Jacobson with knowing and intentional possession with intent to distribute 50 grams or more of methamphetamine on October 20, 2020 (Count II); and charging Williamson and Washington with knowing and intentional possession with intent to distribute 50 grams or more of methamphetamine on October 21, 2020 (Count III).

Defendants Washington and Williamson have filed the instant motions to suppress, arguing that any evidence seized from the October 21, 2020, search of room #417 of the Holiday Inn is fruit of a search warrant issued without probable cause. Both defendants also request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) because the search warrant affidavit for the hotel room was fraudulent on its face. Specifically, the defendants argue the affidavit for the hotel room indicates information came from a CI who was not under terms of parole, probation, or work release, but Jacobsen was on federal supervised release.

## ANALYSIS

### I. Probable Cause for the Warrant

The defendants' motions to suppress are based upon their argument that probable cause did not exist to issue the search warrant for the hotel room.[1] "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)(internal quotation marks omitted)(quoting *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006)); see also *United*

---

[1] Although the subject of the warrant was Williamson, who was also the individual that had checked into the hotel room, the Court will assume that Washington also has standing to challenge the search warrant for the hotel room since apparently her purse was found inside the room during the search and the government does not raise standing as an issue.

*States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019)("Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'")(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002)(quotations and citations omitted). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

       The defendants argue probable cause did not exist to issue the warrant for the hotel room because Jacobsen was not a reliable source and only provided "speculative" information to officers once she was arrested for possession of a controlled substance. The defendants argue there was nothing to tie the contraband found at Jacobsen's residence to Williamson or the hotel room other than Jacobsen's statements, as the female who answered the 602-phone number only stated she was coming to Omaha but she did not state she was bringing contraband. The defendants further assert that although hotel employees indicated they had seen Williamson before, no one at the hotel indicated they were suspicious Williamson was involved in drug activity. The defendants also take issue with the fact that Jacobsen did not state when she last purchased methamphetamine from Williamson or indicate when Williamson last came to Omaha. The defendants argue Jacobsen was not credible based upon her criminal history and because she provided such information to officers after her arrest for possession of a controlled substance. (Filing No. 60 at pp. 2-3; Filing No. 62 at p. 3).

       Contrary to the defendants' assertions, the undersigned magistrate judge finds that the information provided by Jacobsen was sufficiently reliable to establish probable cause. A court considers the totality of the circumstances when determining whether an informant's statements provide probable cause, and the credibility and reliability of the informant "are important factors to be considered" in this analysis. *United States v. Mays*, 993 F.3d 607, 615 (8th Cir. 2021)(citing *United States v. Lewis*, 738 F.2d 916, 922 (8th Cir. 1984) and *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996)). "One 'important' consideration in assessing an informant's credibility and reliability is whether the informant is known or anonymous." *Mays*, 993 F.3d at 615 (citing

*United States v. Nolen*, 536 F.3d 834, 839-40 (8th Cir. 2008)). "[A] tip received from a known informant will more readily support a finding of probable cause, as the informant's reputation can be assessed and she can be held responsible if her allegations turn out to be fabricated." *Id.* (internal quotation marks omitted). Additionally, "[s]tatements against the penal interest of an informant typically carry considerable weight" in establishing reliability. *United States v. Buchanan*, 574 F.3d 554, 561-62 (8th Cir. 2009)(quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001).

In this case, Officer Perna's affidavit states that Jacobsen was located inside the residence at Charles Street during the execution of a search warrant that yielded 466 grams of methamphetamine, a large amount of US currency, and other items indicative of drug trafficking. Officer Perna's affidavit states he then interviewed Jacobsen, who provided Officer Perna with the name and phone number of the individual from whom Jacobsen bought methamphetamine. Jacobsen also admitted her supplier was on the way to Omaha to deliver ten pounds of methamphetamine to Jacobsen. Officer Perna's personal questioning of Jacobsen weighs in favor of her credibility and reliability because she could "be held responsible if her allegations turn out to be fabricated." See *Mays*, 993 F.3d at 615 (finding the in-person "personal questioning" of an informant "enhanced" the informant's reliability and credibility). Additionally, Jacobsen's statements against her penal interest—that she previously purchased methamphetamine and was expecting a delivery of an additional ten pounds of methamphetamine—carry "significant weight" in establishing her reliability. See *id.* (finding informant's reliability and credibility was further bolstered by the informant's admission he took a laptop without permission, a statement against penal interest).

Officer Perna also undertook an independent investigation that corroborated much of the information Jacobsen provided to him during his personal interview of her. See *Nolen*, 536 F.3d at 840 (finding that information supplied by an unproven informant "requires some independent verification to establish reliability"). Jacobsen told Officer Perna her methamphetamine supplier was named "Brandy" and was on her way from Arizona to Omaha to deliver additional methamphetamine to Jacobsen. Jacobsen provided Officer Perna with a 602-phone number for "Brandy." In Officer Perna's presence, Jacobsen called the 602-phone number. The woman who answered the call identified herself as "Brandy" and stated she was on her way to Omaha from Arizona and would arrive that night (October 20, 2020), which was consistent with what Jacobsen told Officer Perna. Officer Perna then independently researched the 602-phone number and found

it was associated with a Brandy Williamson at an address in Tolleson, Arizona. Officer Perna located an Arizona driver's license for Brandy Williamson, which had the same DOB and Arizona address as the Brandy associated with the 602-phone number, which again demonstrates that Jacobsen was providing reliable information regarding the identity of her supplier, "Brandy."

Additionally, Jacobsen told Officer Perna that Brandy "always" stays at a specific Holiday Inn when she comes to town. Officer Perna then confirmed with the Holiday Inn's general manager that a Brandy Williamson checked into room #417 of the hotel on the night of October 20, 2020, which aligns with the time the "Brandy" associated with the 602-phone number indicated she would be arriving in town. Officer Perna showed the Holiday Inn's general manager a picture of Brandy Williamson and the general manager confirmed it was the same woman that had checked in. Other hotel employees also told Officer Perna they recognized the woman in the photo as a woman who has stayed at the hotel recently. So, although Officer Perna did not corroborate Jacobsen's information regarding Brandy's possession or delivery of methamphetamine, he was able to corroborate a number of other details that otherwise demonstrated Jacobsen's information was reliable. See *United States v. Stevens*, 530 F.3d 714, 719 (8th Cir. 2008)("The corroboration of even innocent, minor details can support a finding of probable cause."); see also *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable."). Considering the totality of the circumstances, the undersigned magistrate judge finds that Jacobsen's information was sufficiently credible and reliable. See, e.g., *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002)(finding an unproven informant was sufficiently credible because his statements were against his penal interest and because the police were able to corroborate some of the information he provided). Jacobsen's sufficiently credible and reliable information, combined with the other information acquired by Officer Perna, established that there was a "fair probability that contraband or evidence of criminal activity" would be found in room #417 at the Holiday Inn. See *United States v. Wallace*, 550 F.3d 729, 733 (8th Cir. 2008) ("[O]nly a probability of criminal conduct need be shown in the affidavit."). Therefore, the undersigned magistrate judge finds that probable cause existed for the issuance of the warrant for the hotel room and recommends that the defendants' motion to suppress be denied.

The government additionally raises the *Leon* good faith exception in opposing both defendants' motions. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008)(quoting *Leon*, 468 U.S. at 922 (1984). Nonetheless, because the undersigned magistrate judge finds that the search warrant was valid and supported by probable cause, the court need not address whether the *Leon* good faith exception applies. See *United States v. Hyten*, 5 F.3d 1154, 1156 n.5 (8th Cir. 1993)(noting that the court need not reach the *Leon* issue if the warrant is supported by probable cause).

## II. Motion for *Franks* Hearing

The defendants further argue that false and fraudulent statements were contained within the search warrant application that misled the county court judge and therefore request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). A criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. See *Franks*, 438 U.S. at 155-56. In order to obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the affiant "knowingly and intentionally" made false statements or made them in "reckless disregard for the truth" and (2) if the false information is excised, the affidavit no longer establishes probable cause. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013)(citing *Franks*, 438 U.S. at 155-56). "The requirement of a substantial preliminary showing is not lightly met[.]" *Id.* (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

Both defendants contend the affidavit supporting the hotel room warrant was fraudulent because it included false information that "the CI" was not under terms of parole, probation, or work release, whereas Jacobsen was on federal supervised release. However, in reviewing the entire search warrant affidavit, it is apparent to the reader that the inclusion of a paragraph regarding a CI was a mistake and an obvious drafting error, rather than an intentional false statement or a statement made with reckless disregard for the truth. The affidavit provides a narrative of events

beginning with the execution of a search warrant at Charles Street, where officers contacted an individual named "Patricia Jacobsen" inside the residence during the search. Officers recovered methamphetamine, a large amount of US currency, and other items indicative of drug distribution during that search. The affidavit then states Jacobsen—not a CI—was interviewed and provided officers with the information regarding her supplier, "Brandy," as recounted above. The affidavit does not mention a controlled buy, information from a CI, or anything else about a CI until the sole paragraph at the end of the affidavit mentioning the reliability of the CI.[2] "Search warrant [a]pplications and affidavits should be read with common sense," *Ryan*, 293 F.3d at 1061, and a common sense reader would realize that Jacobsen was not a CI, as she was mentioned by name several times throughout the affidavit, and that the paragraph regarding the reliability of a CI was inserted by mistake, as nothing else in the affidavit mentions a controlled buy or a CI. This drafting error does not constitute a deliberate falsehood or reckless disregard for the truth. See *United States v. Butler*, 594 F.3d 955, 961-62 (8th Cir. 2010)("A mere typographical error does not establish a 'deliberate falsehood,' or a 'reckless disregard for the truth,' nor does it cast doubt on the affidavit's showing of probable cause[.]"). And even if the paragraph regarding the CI's reliability was excised, the affidavit nevertheless establishes probable cause because the information pertaining to a CI was clearly irrelevant and immaterial to the finding of probable cause for the reasons discussed above. Therefore, the undersigned magistrate judge finds that the defendants have not made a "substantial preliminary showing" pursuant to *Franks* and will recommend their motions as to their request for a *Franks* hearing be denied.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter, Jr., United States District Court Judge, that:

1. Defendant Brandy Williamson's Motion to Suppress (Filing No. 59) and request for a *Franks* hearing be denied; and
2. Defendant Elycia Washington's Motion to Suppress (Filing No. 61) and request for a *Franks* hearing be denied.

---

[2] The undersigned magistrate judge had the benefit of reviewing both affidavits and search warrants, which makes it even more apparent that the paragraph regarding a CI in Officer Perna's affidavit for the warrant for the hotel room was mistakenly leftover from Officer Perna's affidavit for the Charles Street residence. However, different county court judges signed each warrant, so the undersigned magistrate judge will assume that the county court judge who signed the hotel search warrant did not have the benefit of also reviewing the Charles Street residence affidavit.

Dated this 25th day of June, 2021.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.